1
2
3
4                        IN THE UNITED STATES DISTRICT COURT
5
6                     FOR THE NORTHERN DISTRICT OF CALIFORNIA
7
8
9    PAUL BIBO, et al.,

10                          Plaintiffs,              NO. C 07-2505 TEH

11              v.                                   ORDER GRANTING IN
                                                     PART AND DENYING IN
12   FEDERAL EXPRESS, INC., et al.,                  PART PLAINTIFFS'
                                                     MOTION FOR CLASS
13                          Defendants.              CERTIFICATION

14

15          This matter came before the Court on Monday, March 30, 2009, on the motion for

16   class certification of proposed named Plaintiffs Paul Bibo, Georgia Shields, Alex Galvez,

17   Marc Garvey, and Bryan Peter.  Having carefully considered the parties' written and oral

18   arguments, Plaintiffs' Motion is GRANTED IN PART and DENIED IN PART for the

19   reasons set forth below.

20

21   **FACTUAL AND PROCEDURAL HISTORY**

22          Proposed named Plaintiffs Alex Galvez and Marc Garvey are or were FedEx couriers

23   responsible for the delivery and collection of packages sent through FedEx.  They bring this

24   suit on behalf of the following proposed classes:

25          All delivery drivers (aka. "Couriers") employed by FedEx Corporation in
            California from April 14, 2006 through the present that were illegally denied
26          statutory wages by any of the following statewide FedEx policies:

27          •      To improperly pay drivers for meal periods that lasted less than thirty
                   minutes (Subclass 1);
28

United States District Court

For the Northern District of California

1

2

- • To fail to compensate drivers one hour of pay for missed or untimely meal periods between April 14, 2006 and March 25, 2007 (Subclass 2);

3

- • To fail to compensate drivers one hour of pay for meal periods that began after the four and one-half hour mark, but before the five and one-half hour mark of their shift between March 26, 2007 and the present (Subclass 3);

4

5

6

- • To fail to compensate drivers one hour of pay for working a split shift (Subclass 4);

7

8

- • To fail to compensate drivers for work performed off-the-clock before or after their shift performing either approved preliminary or post-liminary activities or approved clock-out procedures (Subclass 5);

9

10

- • To fail to compensate drivers for inaccurate wage statements or full payment of wages upon separation (Subclass 6).
- •

11

Pls.' Mot. Class Cert. 2.

12

FedEx couriers keep time records regarding their work using computerized notepads

13

that they carry with them during their workdays.  They input an array of activity codes and

14

times to track their activities throughout the day.  This data is transmitted to the FAMIS

15

database that FedEx maintains, which is used to calculate pay.  It is this data that the

16

Plaintiffs plan to use to calculate damages.  Additionally, couriers complete paper timesheets

17

that include much of the same information.

18

Plaintiffs filed their initial complaint in the San Francisco County Superior Court on

19

February 28, 2007 and an amended complaint on March 16 of the same year; Defendant

20

removed the matter to federal court on May 10, 2007.  The Court denied FedEx's motion to

21

transfer venue on October 10, 2007.  Three possible named plaintiffs were dismissed in

22

August and October of 2008.  The motion for class certification was filed on November 14,

23

2008, and amended and corrected on November 17, 2008.  It is this motion that is currently

24

before the Court.

25

//

26

//

27

//

28

**LEGAL STANDARD**

1    A party seeking to certify a class must demonstrate that it has met all four

2 requirements of Federal Rule of Civil Procedure 23(a) and at least one of the requirements of

3 Rule 23(b).  *Zinser v. Accufix Research Inst., Inc.*, 253 F.3d 1180, 1186 (9th Cir. 2001).  Rule

4 23(a) allows a class to be certified

> only if (1) the class is so numerous that joinder of all members is impracticable;
> (2) there are questions of law or fact common to the class; (3) the claims or
> defenses of the representative parties are typical of the claims or defenses of
> the class; and (4) the representative parties will fairly and adequately protect
> the interests of the class.

8 Fed. R. Civ. P. 23(a); *see also Zinser*, 253 F.3d at 1186.  That is, the class must satisfy the

9 requirements of numerosity, commonality, typicality, and adequacy.  Rule 23(b) provides for

10 the maintenance of several different types of class actions.  Fed. R. Civ. P. 23(b).  Plaintiffs

11 seek to certify the class under Rule 23(b)(3), which allows a class to be certified if the court

12 finds both that common questions of law or fact "predominate" over individual questions and

13 that "a class action is superior to other available methods for fairly and efficiently

14 adjudicating the controversy."  Fed. R. Civ. P. 23(b)(3).

15    The party seeking certification must provide facts to satisfy these requirements;

16 simply repeating the language of the rules in its moving papers is insufficient.  *Doninger v.*

17 *Pac. Nw. Bell, Inc.*, 564 F.2d 1304, 1309 (9th Cir. 1977).  A district court must conduct a

18 "rigorous analysis" of the moving party's claims to examine whether the requirements of

19 Rule 23 are met.  *Gen. Tel. Co. of the Sw. v. Falcon*, 457 U.S. 147, 161 (1982).  However,

20 although the court is "at liberty" to consider evidence that relates to the merits if such

21 evidence also goes to the requirements of Rule 23, *Hanon v. Dataproducts Corp.*, 976 F.2d

22 497, 509 (9th Cir. 1992), the court may not consider whether the party seeking class

23 certification has stated a cause of action or is likely to prevail on the merits, *Eisen v. Carlisle*

24 *& Jacquelin*, 417 U.S. 156, 178 (1974).  If a district court concludes that the moving party

25 has met its burden of proof, then the court has broad discretion to certify the class.  *Zinser*,

26 253 F.3d at 1186.

27

28 **DISCUSSION**

United States District Court

For the Northern District of California

3

**United States District Court**
For the Northern District of California

## I. Summary of the Law Regarding Plaintiffs' Claims

The Court will begin by discussing the law regarding Plaintiffs' claims because the contours of the law will inform the class certification analysis.

### A. Meal Periods

California law establishes that:

(a) No employer shall require any employee to work during any meal or rest period mandated by an applicable order of the Industrial Welfare Commission.

(b) If an employer fails to provide an employee a meal period or rest period in accordance with an applicable order of the Industrial Welfare Commission, the employer shall pay the employee one additional hour of pay at the employee's regular rate of compensation for each work day that the meal or rest period is not provided.

Cal. Labor Code § 226.7.  In this case, the applicable IWC order provides that

(A) No employer shall employ any person for a work period of more than five (5) hours without a meal period of not less than 30 minutes, except that when a work period of not more than six (6) hours will complete the day's work the meal period may be waived by mutual consent of the employer and the employee.

(B) An employer may not employ an employee for a work period of more than ten (10) hours per day without providing the employee with a second meal period of not less than 30 minutes, except that if the total hours worked is no more than 12 hours, the second meal period may be waived by mutual consent of the employer and the employee only if the first meal period was not waived.

(C) Unless the employee is relieved of all duty during a 30 minute meal period, the meal period shall be considered an "on duty" meal period and counted as time worked. An "on duty" meal period shall be permitted only when the nature of the work prevents an employee from being relieved of all duty and when by written agreement between the parties an on-the-job paid meal period is agreed to. The written agreement shall state that the employee may, in writing, revoke the agreement at any time.

(D) If an employer fails to provide an employee a meal period in accordance with the applicable provisions of this order, the employer shall pay the employee one (1) hour of pay at the employee's regular rate of compensation for each workday that the meal period is not provided.

*See* IWC Wage Order #9, § 11.

Plaintiffs assert that this statute, and the requisite interpretation of the wage order, are inconsistent with prior and existing meal break policies of FedEx.  They claim that the Plaintiff class has suffered damages as a result of being improperly paid under state law.

4

United States District Court

For the Northern District of California

1    The precise meaning of this statute is currently contested, specifically regarding

2    whether "provide" requires employers to ensure that breaks are taken or simply to offer

3    employees the opportunity to take a break.  In *Brinkley v. Public Storage, Inc.*, the California

4    Court of Appeal held that "California law does not require an employer to ensure that

5    employees take rest periods.  An employer need only make rest periods available."  84 Cal.

6    Rptr. 3d 873, 883 (Cal. App. 2008) (citing *White v. Starbucks Corp.*, 497 F. Supp. 2d 1080,

7    1086 (N.D. Cal. 2007)).  Likewise, in *Brinker Restaurant Corp. v. Superior Court*, the Court

8    of Appeal held that while employers cannot impede, discourage, or dissuade employees from

9    taking meal periods, they need only provide breaks and not ensure they are taken.  80 Cal.

10   Rptr. 3d 781, 786 (Cal. App. 2008).  However, the California Supreme Court has recently

11   granted review of these two cases to resolve the meaning of "provide" in this statute.  It is

12   therefore apparent that the state of the law on this issue is unsettled.  Accordingly, the Court

13   cannot interpret the statute in this regard, except to note that it is unnecessary to rule on the

14   meaning of "provide" to resolve the current motion.

15   **B. Split Shifts**

16   Under applicable state regulation, employees working split shifts are entitled to

17   additional wages to compensate for the effect of a break in the workday:

18   When an employee works a split shift, one (1) hour's pay at the [prevailing]
     minimum wage shall be paid in addition to the minimum wage for that
19   workday, except when the employee resides at the place of employment.

20   IWC Wage Order #9, § 4(C).[1]

21   There appears to be no legal dispute in this case about the meaning of this regulation.

22   //

23   **C. Pre- and Postliminary Activities**

24   California law requires that employees are paid for all hours worked.  Although this is

25   not an explicit quotation from a particular regulation or statute, judicial interpretations of the

26   _____

27   [1]In this matter, the applicable minimum wage is six dollars and seventy-five cents

28   ($6.75) per hour.

5

United States District Court

For the Northern District of California

state labor code make clear that the operative question in determining what qualifies as time worked before or after the official workday is whether at a particular moment, employees are "subject to the control of [their] employer." *Morillion v. Royal Packing Co.*, 22 Cal. 4th 575, 591 (2000). Based on this inquiry, in *Morillion*, the court thus concluded that where transportation time was under employer control, it was compensable. *Id.* at 595. Furthermore, the court in *Morillion* emphasized that while federal law under the Portal-to-Portal Act legitimates uncompensated time associated with the workday, the federal and state statutory schemes diverge in terms of determining whether travel time is compensable. *Id.* at 591. Although *Morillion* presented a question in the agricultural context, federal courts, in interpreting state law, have likewise clarified that courts considering claims under California state law should expressly disregard federal law under the Fair Labor Standards Act, and look to the issue of control. In *Cervantez v. Celestica Corp.*, 253 F.R.D. 562, 571 (C.D. Cal. 2008), the Central District of California found that employees waiting in security lines were still under the control of their employer, and therefore time spent in such lines was compensable. There, the court distinguished between optional and required activities in which employees engaged during pre- and postliminary periods. *Id.* at 571-72.

FedEx relies in part on a series of federal cases interpreting federal law and part of the Portal-to-Portal Act to justify its position that its policies are consistent with applicable law. Yet as the instant claims are brought under state wage and hour law, the Court's analysis must focus on state law as found in *Morillion* and *Cervantez,* not the federal law to which FedEx refers. FedEx also asserts that the state's rule on *de minimis* work undermines Plaintiffs' legal claim for uncompensated pre- and postliminary activities. The *de minimis* rule does apply "where there are uncertain and indefinite periods of time involved of a few seconds or minutes duration, and where the failure to count such time is due to considerations justified by industrial realities." Div. of Labor Standards Enforcement, Enforcement Policies & Interpretations Manual § 47.2.1. The merits of whether Plaintiffs' claims are compensable under this law are not an appropriate subject for a class certification motion. Finally, FedEx argues that this Court's unpublished opinion in *Cornn* is analogous to

this matter, since there the Court denied certification to a class of workers for uncompensated, pre-shift work, finding that a few seconds of time was *de minimis*, and also that commonality was not established. *Cornn v. United Parcel Service, Inc.*, 2005 WL 2072091, at *4 (N.D. Cal. Aug. 26, 2005).  These questions of commonality and the adequacy of the testimony offered will be addressed below in the appropriate section of the order.

**D. Inaccurate Wage Statements and Post-Separation Pay**

State law requires that employers furnish, at the time of paying wages, accurate wage statements that itemize gross wages earned, hours worked, deductions, net wages earned, dates of the pay period, applicable hourly rates, and relevant names and addresses.  Cal. Labor Code § 226(a).  Employees who suffer injuries "as a result of a knowing and intentional failure by an employer to comply with subdivision (a) is entitled to recover the greater of all actual damages or fifty dollars ($50) for the initial pay period in which a violation occurs and one hundred dollars ($100) per employee for each violation in a subsequent pay period, not exceeding an aggregate penalty of four thousand dollars ($4,000), and is entitled to an award of costs and reasonable attorney's fees."  Cal. Labor Code § 226(e).  Interpretation of this law is not disputed in this case.

State law also requires that employers pay all wages owed to an employee immediately upon discharge or within 72 hours of resignation.   Cal. Labor Code §§ 201, 202.   If the employer fails to pay these wages, "the wages of the employee shall continue as a penalty from the due date thereof at the same rate until paid or until an action therefor is commenced; but the wages shall not continue for more than 30 days."   Cal. Labor Code § 203.  Interpretation of this law is not disputed in this case.

//

//

**II.  Analysis of Plaintiffs' Claims: Defendant's Non-Rule 23 Arguments**

**United States District Court**
For the Northern District of California

1    The Court now turns to analyzing Plaintiffs' motion for class certification.  Prior to

2  analyzing the motion under Rule 23, the Court must consider a series of additional legal

3  arguments that Defendants offer in contesting the class certification motion.

4  **A. Meal Breaks**

5    FedEx asserts that all of Plaintiffs' claims regarding meal breaks have been previously

6  resolved in another case against FedEx, and are therefore prohibited from further litigation

7  under the doctrine of issue preclusion.  They claim that in *Brown v. Federal Express Corp.*,

8  249 F.R.D. 580 (C.D. Cal. 2008), the court's denial of class certification precludes this Court

9  from considering certification of the first three subclasses for meal break-related claims.

10    For the doctrine of issue preclusion to apply, three elements must be satisfied:

11  (1) A claim or issue raised in the present action is identical to a claim or issue
    litigated in a prior proceeding; (2) the prior proceeding resulted in a final
12  judgment on the merits; and (3) the party against whom the doctrine is being
    asserted was a party or in privity with a party to the prior proceeding.

13  *People v. Barragan*, 32 Cal. 4th 236, 253 (2004).

14

15    Pursuant to the explication of state law on meal breaks offered above, what is most

16  clear is that state law on this issue remains unsettled until the pending California Supreme

17  Court cases are resolved.  Thus, whether the issue is the same as that before the *Brown* court

18  is an open question.  The *Brown* opinion clearly turned on that court's interpretation of the

    meaning of the word "provide" in the context of state law on meal breaks.  As a result, since
19
    the state of the law on this issue is now in flux, where the *Brown* court found it to be settled,
20
    it is not an identical issue as that raised in *Brown*.  Accordingly, the first factor for finding
21
    issue preclusion is absent; the issue is not precluded by the decision in *Brown*.
22
      Additionally, the record before the Court is devoid of evidence that the *Brown* class
23
    and the current class are the same party, or parties that are in privity.  That both classes are
24
    comprised of FedEx couriers does not mean that the parties are in privity.  The *Brown*
25
    decision upon which FedEx here relies does not articulate the specific class to which the
26
    *Brown* court denied certification in that case.  Presumably that information is available in
27
    other documents filed in the *Brown* case, but FedEx has not provided this Court with any
28
    evidence that could be used to compare the two classes to determine if there is privity.  As

United States District Court

For the Northern District of California

non-identical classes justify the denial of a collateral estoppel claim, *see Bufil v. Dollar Financial Group, Inc.*, 162 Cal. App. 4th 1193, 1203 (2008) (holding that the claim of a distinct subclass cannot be precluded by collateral estoppel), Defendants have failed to show that the third *Barragan* prong is satisfied.  Accordingly, there is an inadequate showing to find Plaintiffs' claim to be precluded.

Furthermore, even if collateral estoppel were to apply in this case, as it is an affirmative defense pursuant to Federal Rule of Civil Procedure 8, FedEx's failure to plead this defense in their answer prevents FedEx from raising it now.  *In re Adbox, Inc.*, 488 F.3d 836, 841 (9th Cir. 2007) ("Federal Rule of Civil Procedure 8(a) and (c) provide that a defendant's failure to raise an 'affirmative defense' in his answer effects a waiver of that defense.").  Even if *Brown* were to preclude Plaintiffs' meal break claims, FedEx could not raise this defense without amending their answer.

Finally, beyond its issue preclusion argument against Plaintiffs' meal break claims, FedEx additionally argues that the state of substantive law as articulated in *Brown* is such that Plaintiffs' meal break claims fail on their own merits, since the employer must only offer the opportunity to take a break, not guarantee that the break is taken.  Given that the California Supreme Court has granted review of this issue, the Court rejects the argument that *Brown* authoritatively represents the state of relevant law at this time.  Second, although FedEx asserts this argument as a defect in satisfying the requirements of Rule 23(b), in reality FedEx is raising a merits issue that is improper to decide on a motion for class certification.

**B. Split Shift, Pre/Postliminary Activities, and Wage Statements**

FedEx asserts that class certification is improper as to Plaintiffs' split shift, pre- and postliminary activities, and wage statement claims because these issues were not properly pleaded, thus denying FedEx fair notice of these claims.  This argument is without merit as to the first two groups, and is meritorious as to the third claim.

Defendants are entitled to fair notice of all claims, including the grounds upon which the claim is asserted.  *Conley v. Gibson*, 355 U.S. 41, 47-48 (1957), *abrogated on other*

*grounds by Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007).  The complaint here is adequate for these purposes regarding the split shift and meal breaks claims.  As to the split shifts claim, the complaint alleges that "FEDEX required delivery drivers to take two hour unpaid lunch periods on days which were not busy," which is an allegation of a split shift.  FAC 7:18-19.  Likewise, the complaint clearly alleges that "FEDEX would require delivery drivers to perform services for FEDEX when they were not 'clocked-in' or had already 'clocked out.'  FEDEX required delivery drivers to perform services, including servicing computers on trucks, providing employee benefits consulting services, and other services after the delivery drivers had already punched out on their timecards.  FEDEX would wait until delivery drivers had already punched out to discuss business related matters with delivery drivers, and would require delivery drivers to interact with customers after they had already punched out."  *Id.* at 7:8-14.  Similarly, the first cause of action for failure to pay all wages states that it incorporates these factual allegations, and further, that "Defendant would require delivery drivers to make deliveries after they had clocked out and before they had clocked in."  *Id.* at 9:27-28, 10:20-21.  In a notice pleading regime, these allegations are adequate to put FedEx on notice of Plaintiffs' claims.

The same cannot be said for the sixth subclass for which Plaintiffs seek class certification.  Plaintiffs assert in their motion for class certification that "[e]ach instance of a violation of any of the previously mentioned policies results in a Section 226 (wage statement) violation, and potentially a Section 203 (full payment upon resignation or termination) violation as well."  Pls.' Mot. for Class Cert. at 12.  Defendants argue in their opposition that they lacked notice of this claim, as the pleadings are devoid of allegations supporting such a class.  FedEx is correct in this contention.  Careful review of the first amended complaint demonstrates that Plaintiffs did not make allegations in support of these claims.  Furthermore, the Plaintiff class appears in its reply brief to concede this point; although the Plaintiffs address how the first amended complaint provided notice as to the split shift and pre/postliminary activities claims, the reply brief fails to contest that FedEx lacked notice of the claims that are the basis of the sixth subclass.  Without notice, class

10

certification is inappropriate; the Court therefore DENIES certification of the sixth subclass on this basis.

**III. Rule 23**

**A.  Rule 23(a) Requirements**

**1.  Numerosity**

Numerosity does not require that joinder of all members be impossible, but only that joinder be impracticable.  *Arnold v. United Artists Theatre Circuit, Inc.*, 158 F.R.D. 439, 448 (N.D. Cal. 1994); Fed. R. Civ. P. 23(a)(1).  Plaintiffs do not need to state the exact number of potential class members, and numerosity does not require a specific number of class members.  *Arnold*, 158 F.R.D. at 448. The determination of whether joinder is impracticable depends on the facts and circumstances of each case.  *Id.*

FedEx does not contest numerosity in this case, and acknowledges that at least 6,476 couriers have been employed during the class period.  Def.'s Opp. at 3 (citing Ward Decl., ¶ 8).  This is sufficient to satisfy the numerosity requirement of Rule 23(a)(1).

**2.  Commonality**

Rule 23(a)(2) requires that common questions of law or fact exist among class members.  Fed. R. Civ. P. 23(a)(2).  The Ninth Circuit construes the commonality requirement under this rule "permissively," having noted that the requirement under Rule 23(a)(2) is less rigorous than that under Rule 23(b)(3).  *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019 (9th Cir. 1998); *compare* Fed. R. Civ. P. 23(b)(3) (requiring that common questions of law or fact "predominate" in class actions maintained under this subsection) *with* Fed. R. Civ. P. 23(a)(2) (not including "predominate" or similar language in describing the general commonality requirement).  It is sufficient for class members to have shared legal issues but divergent facts or, similarly, to share a common core of facts but base their claims for relief on different legal theories.  *Hanlon*, 150 F.3d at 1019.  Indeed, the Ninth Circuit considers the requirements for finding commonality under Rule 23(a)(2) to be "minimal." *Id.* at 1020.

United States District Court

For the Northern District of California

**United States District Court**
For the Northern District of California

Here, although FedEx asserts that its commonality arguments go to the adequacy of Plaintiffs' claims under the requirements of Rule 23(a), given the minimal requirements of this commonality standard, it is clear that the bulk of FedEx's commonality concerns pertain to Rule 23(b).  Plaintiffs clearly meet the minimal commonality requirement of Rule 23(a), as at least one common question of law or fact animates each subclass for which certification is sought: 1) whether drivers were paid in a manner inconsistent with state law when their meal periods lasted less than thirty minutes; 2) whether drivers were paid in a manner inconsistent with state law when they missed their meal breaks or took them late during the period from April 14, 2006 until March 25, 2007; 3) whether drivers were paid in a manner inconsistent with state law when they began their meal plans after the four-and-a-half hour mark of their shifts but prior to the five-and-a-half hour mark of their shifts during the period from March 26, 2007 to the present; 4) whether drivers were paid in a manner inconsistent with state law when they worked split shifts; 5) whether drivers were paid in a manner inconsistent with state law when they performed approved pre- or postliminary activities, or clocked out pursuant to FedEx b); and 6) whether drivers were paid in a manner inconsistent with state law when they either received inaccurate wage statements or incomplete wages upon separation from FedEx.[2]  The primary question in this case, as in many class actions, is not whether common issues exist but whether common issues predominate.  The predominance of common issues will be addressed in the section below discussing the requirements of Rule 23(b)(3).

**3. Typicality**

Rule 23(a)(3) requires typicality, which the Ninth Circuit also interprets permissively. *Hanlon*, 150 F.3d at 1020.  Typicality requires that the named plaintiffs be members of the class they represent and "possess the same interest and suffer the same injury" as class members.  *Falcon*, 457 U.S. at 156 (citation omitted).  The named plaintiffs' claims need not be identical to the claims of the class to satisfy typicality; rather, the claims are typical if they

---

[2]Although commonality is present for subclass six, the notice issue identified above prevents class certification of this subclass.

1  are "reasonably co-extensive with those of absent class members." *Hanlon*, 150 F.3d at

2  1020.  It is sufficient for named plaintiffs' claims to "arise from the same remedial and legal

3  theories" as the class claims.  *Arnold*, 158 F.R.D. at 449.

4        FedEx does not dispute typicality in this case.  As the legal theories at the core of this

5  case arise from the same set of operative facts under which all FedEx couriers worked, the

6  Court finds that Plaintiffs have met their burden under Rule 23(a)(3).  The named Plaintiffs

7  appear to be average FedEx couriers who served the company under the same policies that

8  governed the employment of all FedEx couriers.

9  **4. Adequacy**

10        The fourth and final Rule 23(a) requirement – adequacy – requires (1) that the

11  proposed representatives do not have conflicts of interest with the proposed class and

12  (2) that the representatives are represented by qualified counsel.  *Hanlon*, 150 F.3d at 1020;

13  *Walters v. Reno*, 145 F.3d 1032, 1046 (9th Cir. 1998).  In this case, FedEx does not dispute

14  the adequacy of the proposed class representatives, and there is no evidence that the proposed

15  named plaintiffs have any conflicts of interest with the class.  Additionally, Plaintiffs'

16  counsel are experienced class action litigators.  *See* Feder Decl. in Support of Mot. for Class

17  Cert. ¶¶ 7-12.  Pursuant to Federal Rule of Civil Procedure 23(g)(1)(A), the Court finds that:

18  (1) Plaintiffs' counsel have diligently identified and investigated potential claims in this

19  litigation; (2) counsel have sufficient experience in pursuing class cases; (3) counsel have

20  demonstrated an adequate understanding of the applicable law; and (4) counsel have the

21  necessary resources to fully represent the class throughout this litigation and are committed

22  to dedicating those resources to this case.  Based on Plaintiffs' counsel's representation in

23  this case thus far and the material contained in the Feder Declaration, counsel appears to be

24  adequate.  Accordingly, the Court finds that Plaintiffs have satisfied the adequacy

25  requirements of Rule 23(a)(4).

26  //

27  **B. 23(b)(3) Requirements**

28

United States District Court
For the Northern District of California

1    Having found that the proposed class satisfies the requirements of Rule 23(a), the

2    Court must consider whether the class also meets the requirements of Rule 23(b).  Plaintiffs

3    seek to certify the class under Rule 23(b)(3), which allows a class to be certified if the court

4    finds both that common questions of law or fact "predominate" over individual questions and

5    that "a class action is superior to other available methods for fairly and efficiently

6    adjudicating the controversy."  The rule lists four factors that a court should consider when

7    deciding whether to certify a (b)(3) class:

8        (A) the class members' interests in individually controlling the prosecution or
         defense of separate actions; (B) the extent and nature of any litigation
9        concerning the controversy already begun by or against class members; (C) the
         desirability or undesirability of concentrating the litigation of the claims in the
10       particular forum; and (D) the likely difficulties in managing a class action.

11   Fed. R. Civ. P. 23(b)(3).

12       As the question of whether "a class action is superior to other available methods for

13   the fair and efficient adjudication of the controversy" is an overriding one common to all

14   proposed subclasses, the Court will address the issue of superiority, and the 23(b) factors

15   common to the subclasses before turning to the issue of predominance as regards each

16   specific subclass.  Notably, FedEx's opposition to class certification pursuant to Rule 23(b)

17   focuses exclusively on the predominance of common issues; they do not suggest that class

18   adjudication is inferior, or that the factors from the rule are deficient here.  Indeed, Plaintiffs

19   offer adequate proof that these factors militate toward class certification.  Plaintiffs

20   persuasively argue that judicial economy is furthered by class treatment of these claims, as

21   avoiding repetitious suits before the courts of this state is a valid factor weighing toward

22   class treatment of the claims.  Class treatment will increase class members' access to redress

23   because it unifies what may be a series of small claims, which is one of the main reasons to

24   justify class treatment.  Additionally, class treatment may relax any concerns that current

25   employees may have about retaliation if they were to bring a suit against FedEx, as unity of

26   the employee class would prevent retaliation.

27       Furthermore, Plaintiffs argue, and FedEx does not disagree, that the factors

28   themselves weigh in favor of class treatment.  There is no evidence offered that class

14

**United States District Court**
For the Northern District of California

1   members would have an interest in individual control of their cases; to the extent that their

2   damages may be so small as to prevent individual litigation, individual control appears to be

3   a worse option for the average class member.  No other pending cases focus on the issues in

4   this case.  This forum appears as good as any other in California for litigating the claims of

5   class members.  The parties have completed a significant amount of discovery in this case,

6   and the Court has already conducted multiple case management conferences.  Continuing

7   litigation in this forum would therefore be desirable.

8        However, the central question in certifying a 23(b)(3) class is the issue of

9   predominance of class issues.  As to each subclass, FedEx argues that certification of a 23(b)

10  class is improper because individual issues predominate, thus making management of a class

11  action a problem for the Court.  The Court will discuss this argument with respect to each of

12  Plaintiffs' subclasses in turn below.

13  **1.  Subclass 1: Interrupted meal breaks**

14       Plaintiffs' first subclass seeks compensation for workers who FedEx clocked in for an

15  unpaid break when their meal break was shorter than 30 minutes long.  In the situation giving

16  rise to such a claim, the driver would clock out for lunch, and then complete a delivery or

17  some other work during the break without clocking back in.  When this occurred, the FAMIS

18  system would automatically clock the worker back in, and pay the worker for the time spent

19  on the break, up to 30 minutes.  Sunseri Depo. 98:14-116:1.  Claimants in this subclass assert

20  that FedEx violated state law by underpaying workers for the full statutory value of such a

21  violation of state wage and hour laws, which is one hour of pay at regular rates.  Cal. Labor

22  Code § 226.7.

23       FedEx attacks certification of this subclass by noting that state law permits break

24  waivers, and seeming to assert that such instances reflect voluntary waivers by drivers of

25  their rights to breaks and to compensation where they do not receive their breaks.  FedEx

26  does offer some deposition evidence to support the claim that the drivers did at times

27  voluntarily give up their breaks and continue working.  However, because on a class

28  certification motion, this Court is not to address the merits or likelihood of success of the

1   claims that the class presents, this is not the proper timing to consider this matter; FedEx may

2   attempt to prove that Plaintiffs in subclass one lack damages at a later time, or that waivers

3   eviscerate their claims. *Eisen*, 417 U.S. at 178. Further, FedEx appears to make this claim

4   under the interpretation of state law found in *Brown*, thus asserting that couriers do not

5   deserve compensation for missed or shortened meal breaks since they were offered and

6   voluntarily shortened or missed by drivers. To the extent that resolution of this argument

7   requires interpretation of the word "provide" pursuant to the pending Supreme Court cases

8   on this wage and hour issue, this issue is not for the Court to resolve at this time. A shared

9   legal dispute "militates in favor of class certification, since it must be resolved for the class

10  as a whole." *Kamar v. Radio Shack Corp.*, 254 F.R.D. 387, 405 (C.D. Cal. 2008).

11          Additionally, FedEx argues that predominance is lacking, as the presence of a

12  corporate policy is insufficient to establish commonality. FedEx asserts that because each

13  courier's job is different, due to variations in route, supervisor, and preferences regarding the

14  timing of breaks, common questions of fact do not exist. FedEx seems to be arguing too

15  much with these assertions; it is simultaneously claiming that its policies are consistent with

16  state law but that the policies do not apply evenly to all drivers. This claim is specious. All

17  employees worked as couriers under standardized employment policies that were the basis of

18  their wage calculations. Plaintiffs have identified the relevant policies and the law with

19  which they argue the policies are inconsistent, and as such offer a common question of law

20  and fact that predominates over individual inquiries.[3]

21          Finally, FedEx argues that Plaintiffs have failed to offer a means of common proof,

22  which Defendant asserts is required.[4] Plaintiffs claim, in support of their motion, that

23  FedEx's FAMIS system offers a ready means of common proof: time records should be able

24  _____

25          [3]That is not to say that individual damages assessments will not be necessary;
    however, the Ninth Circuit has made clear that differing amounts of damages does not defeat
26  class certification. *Blackie v. Barrack*, 524 F.2d 891, 905 (9th Cir. 1975) ("The amount of
    damages is invariably an individual question and does not defeat class action treatment.").

27
          [4]FedEx only offers California state cases, and a persuasive, but not controlling,
28  Central District case for this point. Their argument here is not without merit, but it is not
    controlling, as proof is not a requirement of the standard 23(b) analysis.

United States District Court

For the Northern District of California

to demonstrate when workers began an unpaid thirty-minute break that they then interrupted for work, which under state law requires payment of an hour of wages if no meal break was taken.  Plaintiffs have offered an uncontroverted declaration in which an expert on corporate economics attests that her review of FAMIS records demonstrates that she can identify the time and duration of meal breaks, and the amount of compensation received for each short meal period.  Stuckwisch Decl. ¶ 5.

FedEx attempts to circumvent the use of their time records as means of proof in two ways.  First, FedEx asserts that the expert's claims are useless because she has not provided examples of her calculations.  However, neither has FedEx demonstrated with examples from their time records that the time records cannot be used in the manner that the expert declares.  As Plaintiffs' intended use of the time records is uncontroverted, except for FedEx's blind assertions that the records cannot be used, the Court finds the expert declaration to be well-founded.  Second, FedEx argues that couriers introduce inaccuracies into the time records in FAMIS, thus rendering them useless for purposes of calculating damages.  Given FedEx's legal obligation to keep accurate time records of their employees' hours worked and wages, this argument cannot justify rejection of the use of their records for purposes of recalculating wages owed to workers.  To the extent that FedEx argues that the FAMIS records are inaccurate, this too is a question common to the class.  Accordingly, class certification of subclass one is appropriate.

**2. Subclasses 2 and 3: Tardy and Missed Meal Breaks**

Plaintiffs ask the Court to certify their second subclass as well, in which they seek compensation for workers who, in the period from April 14, 2006 through March 26, 2007, were improperly compensated for one hour's wages when they either did not receive their break or took a break later than required under California Labor Code section 226.7.  Likewise, Plaintiffs seek certification of their third subclass, for compensation for workers who, in the period from March 27, 2007 to the present, were improperly compensated for one hour's wages when their meal break began after the four-and-one-half hour point but prior to the five- and-one-half hour point in their shift.  These claims arise under the same regulatory

United States District Court

For the Northern District of California

1   provision that states that "[n]o employer shall employ any person for a work period of more

2   than five (5) hours without a meal period of not less than 30 minutes" and that if "an

3   employer fails to provide an employee a meal period in accordance with the applicable

4   provisions of this order, the employer shall pay the employee one (1) hour of pay at the

5   employee's regular rate of compensation for each workday that the meal period is not

6   provided." *See* IWC Wage Order #9, § 11.  The only difference between these two claims is

7   the operative FedEx policy during the two time periods in question.  At the close of the first

8   time period, FedEx updated FAMIS to credit employees with an hour of pay if the employee

9   had not yet started a meal break by five-and-a-half hours into the shift.  Prior to that time,

10  FedEx policy appears not to have credited drivers with supplemental wages if they did not

11  receive a timely meal break by this point in their shift.  As these two subclasses are closely

12  related, the Court will address them in unison, and finds common issues to predominate for

13  these two subclasses.

14      FedEx asserts the same arguments against certification of these subclasses as offered

15  against the first subclass.  FedEx asserts that drivers received tardy or no breaks voluntarily

16  because they waived them, or because they structured their days as they wished and gave up

17  their breaks.  FedEx argues that *Brown* requires interpreting "provide" in the state wage and

18  hour code to simply obligate employers to offer breaks, not ensure that they are taken.

19  FedEx claims that corporate policy does not establish predominance.  FedEx also asserts that

20  Plaintiffs did not offer a means of common proof, insofar as the records are inaccurate and

21  the expert declaration is unsupported.  As the Court analyzed the shortcomings of these

22  arguments above in its treatment of the first subclass, they do not warrant further analysis.

23  These arguments are without merit as to the second and third subclasses for the same reasons

24  they were regarding the first subclass since certification of all three subclasses is sought

25  pursuant to violation of the same state statute and regulation.

26      Additionally, FedEx argues that state law does not require a meal break to be

27  commenced unless the work shift exceeds five hours.  However, Plaintiffs have provided the

28  Court with a case in which a California court reviewed related regulations to require a "meal

18

1    period of 30 minutes per 5 hours of work." *Cal. Hotel & Motel Ass'n v. IWC*, 25 Cal. 3d

2    200, 205 (1979).  Although FedEx offers a reasonable interpretation of this regulation, this

3    legal dispute is a common question of law that unites the members of subclasses two and

4    three.  Furthermore, Plaintiffs have identified the relevant policies and the law with which

5    they argue FedEx's policies are inconsistent, and as such offer a common question of law

6    and fact that predominates over individual inquiries.  Where a common legal dispute is

7    shared among potential class members, this is a factor in favor of certification.  *See Kamar*,

8    254 F.R.D. at 405.  As a result, the Court concludes that common issues predominate on

9    Plaintiffs' claims in subclasses two and three, and that the claims appear manageable on a

10   class basis.

11   **3. Subclass 4: Split Shifts**

12        Plaintiffs seek certification of their fourth subclass for violation of state regulation that

13   requires that "[w]hen an employee works a split shift, one (1) hour's pay at the [prevailing]

14   minimum wage shall be paid in addition to the minimum wage for that workday."  IWC

15   Wage Order #9, § 4(C).  Plaintiffs assert that FedEx's policy of paying employees one

16   additional hour of wages for every three hours between shifts results in noncompliance with

17   state regulation when the shift is split by less than three hours.  *See* LeClerc Decl. Ex. 7.

18        FedEx asserts in contrast that the split shift policy during the time in question called

19   for payment of one dollar per hour beyond the regular wage rate for each hour worked during

20   the split shift, and further that couriers should receive at least seven hours of pay for split

21   shifts.  Galvez Dep. 59:12-20; Zaborski Decl. ¶¶ 15-16.  FedEx does not appear to dispute

22   predominance, instead arguing that because this policy more than suffices under state law,

23   the Court should deny certification.

24        As observed above, the Court's task in considering a class certification motion is to

25   determine whether common issues of law and fact predominate, not whether Plaintiffs will

26   prevail on the merits of their claims.  On its face, this issue presents the common question of

27   fact of what was FedEx's split shift policy, and the common issue of law of whether that

28   policy satisfied the requirements of state regulation.  When resolution of a common legal

United States District Court

For the Northern District of California

19

1  dispute is required for the class as a whole, this is a factor in favor of certification. *See*

2  *Kamar*, 254 F.R.D. at 405.  Accordingly, subclass 4 is certified.

3  **4. Subclass 5: Pre- and Postliminary Work**

4      Plaintiffs seek certification of their fifth subclass, in which they assert that FedEx

5  policy requiring employees to complete discrete tasks after clocking out daily is contrary to

6  judicial interpretation of state law, which requires payment for all hours worked and protects

7  employees from being denied pay for tasks they must perform under the control of their

8  employers.  Plaintiffs specifically claim that FedEx policy requires employees to wait in line

9  to return equipment and check their schedules, which may result in discussion with

10 supervisors regarding scheduling problems, and therefore requires off-the-clock work. *See*

11 LeClerc Decl. Ex. 8 & 9.  Additionally, Plaintiffs allege that FedEx policy explicitly states

12 that "[e]xcept for certain approved preliminary and postliminary activities, no employee

13 should perform work 'off the clock' for any reason."  Plaintiffs assert that these policies are

14 inconsistent with state law.  Plaintiffs provide evidence that couriers perform these activities

15 daily  and others, such as cleaning of trucks or translation for customers, with varying

16 frequency.

17     FedEx challenges certification of this subclass by arguing that it lacks predominant

18 common issues, since many of the postliminary activities performed are rare or occasional.

19 Furthermore, FedEx asserts that the activities in question are consistent with federal law, and

20 *de minimis* under state law.  Finally, FedEx argues that common proof is an issue here, since

21 there is no way to demonstrate what kind of work members of the Plaintiff class performed

22 each day during the class period.

23     Plaintiffs have met their burden under Rule 23 for this subclass.  Although FedEx is

24 correct that some of the activities in question may be too rare to demonstrate damages, this is

25 not a question before the Court on a class certification motion.  To the extent that there is a

26 common question of the interaction between FedEx policy and state law, this is an

27 appropriate subclass for certification.  While there is some testimony that undercuts

28 Plaintiffs' claims of common fact, there are enough common facts for certification.

United States District Court

For the Northern District of California

United States District Court

For the Northern District of California

Likewise, whether the amounts of work in question are *de minimis* is a common question of law.  Furthermore, FedEx's reliance on federal law is misplaced, since this case is based on substantive state law, and further, since cases interpreting state law expressly observe that the state regulations extend greater protections to protect workers from uncompensated pre- and postliminary labor than the federal law does.

Plaintiffs' claim ultimately meets the standard for 23(b) certification, and as such should be certified.  The standard of 23(b) is whether Plaintiffs have shown that common issues of law or fact predominate.  Whether the kind of work being performed before and after paid time qualifies as *de minimis* is one common issue of law.  Whether this policy of clocking out then waiting in line and checking schedules violates the state law is another common issue of law.  Although there are questions of common proof, particular with regard to the non-policy based assertions of extra work, such as cleaning or translating, these issues can be resolved at the point of performing individual damages assessments, which the Ninth Circuit has held to be "an individual question [that] does not defeat class action treatment." *Blackie*, 524 F.2d at 905.  It may well be that the resolution of this subclass will be injunctive relief that brings FedEx policy into line with state law, if damages cannot be proven, but this does not militate against certification.  As a result, the Court certifies this subclass.

**5. Subclass 6: Inaccurate Wage Statements & Improper Payment upon Separation**

Plaintiffs' only claim regarding the FedEx's failure to provide accurate wage statements and to pay timely for wages due upon separation asserts that the Defendant violated Labor Code sections 201, 202, 203 and 226.  The Court need not address whether common issues predominate for this subclass because the Court has already found that FedEx lacked notice of this claim.  On this basis, the Court denies certification of subclass 6.

**CONCLUSION AND RECOMMENDATION**

For the reasons discussed above, the Court hereby GRANTS Plaintiffs' motion for class certification as to the first five subclasses and DENIES the motion as to the sixth subclass.  However, in light of the pending cases before the California Supreme Court

regarding the meaning of "provide" in the state wage and hours statute, the Court STAYS all further proceedings regarding subclasses one, two, and three until the Supreme Court resolves this legal issue.  At the next telephonic case management conference on May 4, 2009, at 1:30 P.M., the parties should be prepared to discuss how the case will proceed, and whether discovery can be efficiently bifurcated to proceed as to subclasses 4 and 5 while being stayed for subclasses 1-3.

**IT IS SO ORDERED.**

Dated: April 21, 2009

_____
THELTON E. HENDERSON, JUDGE
UNITED STATES DISTRICT COURT