SANDRA C. ISOM (Bar No. 157374)
**FEDERAL EXPRESS CORPORATION**
3620 Hacks Cross Road
Building B, 3rd Floor
Memphis, Tennessee 38125-8800
Telephone: 901.434.8526
Facsimile: 901.434.9271

Attorneys for Defendant
FEDERAL EXPRESS CORPORATION

UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

ALEX GALVEZ, an individual, and MARC GARVEY, an individual, and on behalf of all other similarly situated,

Plaintiffs,

v.

FEDERAL EXPRESS INC., a Delaware Corporation, and DOES 1-500, inclusive,

Defendants.

Case No. C07-02505 TEH

**DEFENDANT'S NOTICE OF MOTION AND MOTION FOR PARTIAL SUMMARY JUDGMENT AS TO THE INDIVIDUAL PLAINTIFFS' SPLIT SHIFT PREMIUM CLAIM; DEFENDANT'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT; DECLARATION OF GREGORY RUPP; DECLARATION OF GENA JOHNSON; REQUEST FOR JUDICIAL NOTICE**

**Hearing Date: April 11, 2011**
**Time: 10:00 a.m.**

Place: Dept. 12, 19th Floor

Honorable Thelton E. Henderson

Trial Date: None Set

## NOTICE

On April 11, 2011, at 10:00 a.m. or as soon thereafter as the matter may be heard, before the Honorable Thelton E. Henderson, Judge in the Northern District of California, Defendant will, and hereby does move for an order granting partial summary judgment as to the individual Plaintiffs' split shift premium claims in the above captioned action. This motion is based upon this Notice of Motion and supporting memorandum, the Joint Separate Statement of Undisputed Material Facts filed contemporaneously herewith, supporting declarations of Gregory Rupp and Gena Johnson, and accompanying attachments thereto, and request for judicial notice.

## RELIEF SOUGHT

Pursuant to Rule 56(b) of the Federal Rules of Civil Procedure, Defendant FedEx seeks an order granting partial summary judgment as to the Plaintiffs' split shift premium claims.

## MEMORANDUM OF POINTS AND AUTHORITIES

### I. STATEMENT OF THE ISSUES

1. What is the proper method for determining an employer's compliance with the split-shift premium requirement of Industrial Welfare Commission (IWC) Wage Order 9 §4(C) (Title 8 C.C.R. §11090(4)(C))?

2. Did Plaintiff Garvey receive the required split shift premium for his shift on May 30, 2006?

3. Did Plaintiff Galvez receive the required split shift premium for his shift on November 21, 2006?

### II. STATEMENT OF FACTS

The parties' Joint Separate Statement of Undisputed Material Facts (JSUMF) pursuant to L.R. 56-2(b) is filed contemporaneously with this motion and with permission from this Court. The undisputed facts assume, for purposes of this motion only, that the two shifts in question are split

shifts pursuant to IWC Wage Order 9 §2(N) (Title 8 C.C.R. §11090(2)(L)). Plaintiffs Marc Garvey and Alexander Galvez, former couriers, last worked for FedEx in 2006. (JSUMF 1) The California minimum hourly wage rate in 2006 was $6.75. (JSUMF 2) During his shift on May 30, 2006, Plaintiff Garvey worked from 7:30 a.m. to 12:00 p.m. and from 1:30 p.m. to 6:15 p.m., for a total of 9 hours and 15 minutes of paid work time. (JSUMF 3) In order for Garvey to receive the minimum wage for each hour worked plus an additional hour at minimum wage for his shift on May 30, 2006, he had to receive at least $69.19 in wages for that shift, which he did. (JSUMF 4). Garvey's base rate of pay was $20.15 per hour. (Declaration of Gena Johnson, ¶¶5-6, Exhibit A). During his shift on November 21, 2006, Alexander Galvez worked from 7:00 a.m. to 12:32 p.m. and from 1:47 p.m. to 8:08 p.m., for a total of 11 hours, 53 minutes of paid work time (JSUMF 6). In order for Galvez to receive the minimum wage for each hour worked plus an additional hour at minimum wage for his shift on November 21, 2006, he had to receive at least $87.19 in wages for that shift, which he did. (JSUMF 7). Galvez's base rate of pay was $20.41 per hour. (Declaration of Gena Johnson, ¶¶7-8, Exhibit B).

## III. ARGUMENT

### A. A Plain Reading of the Split Shift Premium Regulation Requires That An Employee Receive An Extra Hour of Minimum Wage Only If His Total Daily Wages Are Less Than The Minimum Wage Multiplied By The Sum Of His Actual Hours Worked Plus One Hour.

Pursuant to Article XIV of the California Constitution, the Legislature may provide for minimum wages and for the general welfare of employees and for those purposes, may confer on a commission legislative, executive, and judicial powers. Pursuant to Section 1173 of the California Labor Code, the Legislature conferred on the Industrial Welfare Commission the power to regulate minimum wages, maximum hours, and working conditions in the various occupations, trades and industries in which employees are employed in this state. The IWC exercised their regulatory power through the issuance of Wage Orders which are enforced by the Department of Labor Standards

Enforcement pursuant to Cal. Lab. Code §90.5. IWC Wage Order 1 establishes the minimum wage to be paid to each employee in the state of California. IWC Wage Orders 2-17 provide industry-specific standards for things like breaks, reimbursements, etc. Wage Order 9 applies to employees in the Transportation Industry. The disputed issue presented for resolution by way of FedEx's motion concerns the proper method for calculating a split shift premium pursuant to IWC Wage Order 9 §4(C).

It is well settled that courts first look to the words of the statute, "because they generally provide the most reliable indicator of legislative intent." *See Murphy v. Kenneth Cole Productions, Inc.* (2007) 40 Cal.4th 1094, 1104, quoting *Hsu v. Abbara* (1995) 9 Cal.4th 863, 871. "If the statutory language is clear and unambiguous our inquiry ends." *Id.* The split shift regulation that applies to FedEx is contained in Section 4(C) of IWC Wage Order 9 and is quite clear and unambiguous:

> **4. MINIMUM WAGES**
>
> (C) When an employee works a split shift, one (1) hour's pay at the minimum wage shall be paid in addition to the minimum wage for that workday, except when the employee resides at the place of employment.

*See* IWC Wage Order 9, attached as Exhibit A to FedEx's Request for Judicial Notice, submitted concurrently herewith.

On its face, the regulation calls for a calculation based on an employee's wages for the full ***"workday,"*** i.e., an employee is only entitled to a split-shift premium if his total daily wages are less than the sum of the actual hours worked plus one additional hour, multiplied by the minimum wage.

FedEx anticipates that Plaintiffs will urge in their opposition that FedEx owes an additional hour at the minimum wage for the workday, regardless of the amount of regular wages in excess of the minimum wage that FedEx paid Plaintiffs for that workday. This interpretation is not supported by a plain reading of the regulation and defies logic. If Plaintiffs' interpretation were correct, the regulation would be stated differently, such as:

"When an employee works a split shift, one extra hour's pay at the minimum wage shall be paid in addition to the regular wages for that workday;"

or, just simply:

"When an employee works a split-shift, one hour's pay at the minimum wage shall be paid."

It is also doubtful that the IWC would have included the split shift premium regulation under the heading "Minimum Wages" if it intended the premium to apply in addition to regular wages that already far exceed the minimum wage. The regulation likely would have had its own "Split Shift Premium" heading, such as is the case with the Reporting Time Pay regulation, which requires compensation at the "regular rate of pay," not mininum wage. *See* IWC Wage Order 9(5). Because both regulations are contained in Wage Order 9, the IWC must have intended to draw a distinction between the receipt of minimum wages and "regular" wages that might exceed minimum wage just as the Legislature did. *Compare* Cal. Lab. Code §226.7(b) (requires employer to pay one additional hour of pay at the employee's regular rate of compensation for each work day that the meal or rest period is not provided); Cal. Labor Code §510 (requires overtime to be paid at rate of one-half to two times the regular rate of pay); Cal. Labor Code §1197 (requires employees receive minimum wage).

Plaintiffs' interpretation rewrites the regulation, replacing "in addition to the ***minimum*** wage for that work day" with "in addition to the ***regular*** wages for that workday" which contravenes a basic rule of statutory interpretation. In determining statutory intent, a court must look first to the words of the statute themselves, giving to the language its usual, ordinary import and according significance, if possible, to every word, phrase and sentence in pursuance of the legislative purpose. *Dyna-Med, Inc. v. Fair Employment and Housing Commission* (1987) 43 Cal.3d 1379, 1386-87. A construction making some words surplusage is to be avoided. Id. at 1387. "If there is no ambiguity in the language, we presume the Legislature meant what it said and the plain meaning of the statute governs." *Murphy*, 40 Cal.4th at 110, quoting *People v. Snook* (1997) 16 Cal.4th 1210, 1215. The

regulation is clear and unambiguous.

**B. The Legislative History, Historical Circumstances, And Other Extrinsic Aids Support A Reading Of The Split Shift Premium Regulation To Require That An Employee Receive An Extra Hour of Minimum Wage Only If His Total Daily Wages Are Less Than The Minimum Wage Multiplied By The Sum Of His Actual Hours Worked Plus One.**

If this Court finds that the regulation's language is ambiguous or susceptible of more than one reasonable interpretation, this Court may turn to extrinsic aids to assist in interpretation. *Murphy*, 40 Cal.4th at 110, citing *People v. Jefferson* (1999) 21 Cal.4th 86, 94. "Both the Legislative history of the statute and the wider historical circumstances of its enactment may be considered in ascertaining legislative intent." *Dyna-Med, Inc.*, 43 Cal.3d at 1387, citing *California Mfrs. Assn. v. Public Utilities Com.* (1979) 24 Cal.3d 836, 844. The Legislative history of the identical split shift premium contained in various Wage Orders demonstrates that it is intended to address only minimum wage requirements, providing an employee with a split-shift premium where his wages for the workday would otherwise fall below the minimum wage for the sum of all hours worked plus one additional hour.

In 1976, the IWC amended parts of previously published wage orders. *See* Exhibit B to Defendant's Request for Judicial Notice (Wage Order 7.76, effective in 1976, increased the amount of the split shift premium in effect since 1974 to reflect the current minimum wage for all persons employed in the mercantile industry). The following year, the IWC issued a revised Statement as to the Basis for Wage Orders 1, 3, 4, and 8, which contain identical split shift premium requirements as Wage Order 9 (except as to the current amount of minimum wage). *See* Exhibit C to Defendant's Request for Judicial Notice.[1] Regarding the split shift premium pay, the Commission explained:

> In Subsection (C) the Commission continued the split-shift provision on the basis that a <u>minimum wage worker's</u> income should not be <u>eroded</u> by the additional <u>expense</u> involved in

[1] For ease of reference, the cited excerpts from the Statement of Basis are marked and appear behind the cover page of the transcript, followed by the entire transcript.

> working a split-shift.
>
> Some employee representatives asked that the $2.50 be paid in addition to whatever regular rate of pay was earned during the day, but most wage boards agreed that the premium should be paid in addition to the minimum wage for hours worked.[2]

*See* Exhibit C to Request for Judicial Notice, pp. 28-29 [emphasis added].[3]

There is no reason to believe that the rationale for the split shift requirement in Wage Order 9 is any different from all other Wage Orders that contain the identical requirement. The IWC was concerned that the employee's wages for the day may, in effect, fall below minimum wage due to the assumed commuting expenses incurred in working a split shift. The IWC explicitly rejected the contention that the premium was due irrespective of the amount paid for actual hours worked for the day. Rather, the IWC recognized that the purpose of the regulation is to ensure that employees receive minimum wage for all hours worked, plus an additional hour at the minimum wage to help offset the commuting costs incurred during the break and thus avoid the potential for an employee to effectively "net" less than the minimum wage for the day. In other words, the IWC sought to preserve the value of the employee's minimum wage earnings, consistent with the requirement that the employee receive minimum wages for all hours worked. The IWC's refusal to provide more than the minimum wage is consistent with its stated purpose and powers, and its 1977 revised Statement of the Basis for the split shift premium.

The IWC's intent and concern regarding commuting expenses associated with a split-shift is

---

[2] The minimum wage in 1976 was $2.50.

[3] The Commission's purpose in adopting the revised Statement was to comply with an order of the Superior Court of Orange County which had issued a temporary restraining order in an action filed by the California Manufacturers' Association (CMA) challenging the validity of four of the orders. *See id.*, pp. 3, 6. The court found merit to the CMA's claim that the statements did not adequately comply with California Labor Code §1177 (*id.* p. 7), which provides that the Commission shall prepare a statement as to the basis upon which an adopted or amended order is predicated. A majority of the Commissioners must concur in the statement.

further highlighted by the fact that no premium is required if the employee resides at the place of employment. *See* Wage Order 9(4)(C). Presumably, a resident-employee incurs no expense in commuting between home and work during the split shift break. Given that the intent of the split-shift premium is to prevent erosion of the minimum wage when an employee has to incur expense traveling to and from work between a split-shift, it follows that if the employee already earns more than the minimum wage plus one hour for that work day, then he is not entitled to receive any additional split-shift premium.

The 1978 DLSE interpretation of the split-shift regulation explicitly states:

> The IWC emphasized in a statement of basis that the premium is to be paid in addition to the minimum wage for the day and NOT in addition to whatever the regular rate is paid. <u>If the wage rate is higher than the applicable minimum wage, the excess over the minimum wage is credited toward the split-shift premium.</u>

*See* DLSE Operations and Procedures Manual §10.48, page 5 (1978 edition), attached as Exhibit D to Defendant's Request for Judicial Notice [emphasis in original].[4] While this interpretation is not included in the most recent DLSE Manual, there is no indication the DLSE has repudiated this position. On the contrary, according to Gregory Rupp, the former Assistant Chief for California's Division of Labor Standards Enforcement from December 2004 to July 2008, who was responsible for managing the statewide Bureau of Field Enforcement during this time frame, the credit allowed pursuant to §10.48 was the appropriate method used by the DLSE to determine compliance with the

---

[4] The DLSE Manual summarizes the policies and interpretations the DLSE has followed and continues to follow in discharging its duty to administer and enforce the labor statutes and regulations of the State of California. While the DLSE is authorized to issue opinion letters or policy manuals that restate or summarize the agency's decisions in prior cases, the agency's opinions do not carry the force of law unless they comply with the Administrative Procedures Act. *See Tidewater Marine Western, Inc. v. Bradshaw*, 14 Cal. 4th 557, 571 (1996). The DLSE website currently contains the following admonition: Pursuant to Executive Order S-2-03, the DLSE opinion letters and the Enforcement Policies and Interpretations Manual are currently under review to determine their legal force and effect and to ensure compliance with the requirements of the Administrative Procedures Act. Please note, in addition, that DLSE opinion letters are advice in specific cases only. *See* <u>http://www.dir.ca.gov/dlse/DLSE_OpinionLetters.htm</u>.

split shift premium requirement. *See* Declaration of Gregory Rupp, ¶¶1-10. If the DLSE intended to repudiate or change this enforcement method, the subsequent manual(s) would need to contain the revision and explain the reason for the change and the new enforcement method. *Id.* at ¶11.

### C. Plaintiffs Garvey And Galvez Each Received The Required Split Shift Premium During the Shifts At Issue In This Motion.

It is undisputed that each Plaintiff received regular wages in an amount exceeding the minimum wage for all hours worked plus an additional hour of minimum wage during their respective shifts. Plaintiff Garvey received more than $69.19, which exceeds 10 hours and 15 minutes of minimum wages for a shift that included 9 hours and 15 minutes of time worked. *See* JSUMF, ¶¶2-4. Plaintiff Galvez received more than $87.19, which exceeds 12 hours and 53 minutes of minimum wages for a shift that included 11 hours and 53 minutes of time worked. *See* JSUMF, ¶¶ 2, 6-7. Because the plain and clear language of the split shift premium regulation allows a credit against the regular wages that Plaintiffs received for these shifts, FedEx has complied with the regulation.

Based upon the foregoing, Plaintiffs' split shift premium claim based upon the two shifts in question fails as a matter of law and summary judgment should be entered in favor of FedEx on Plaintiffs' split shift premium claims for any shifts when the Plaintiffs' regular wages equaled or exceeded the minimum wage plus an additional hour of minimum wage.

## IV. CONCLUSION

Based upon the foregoing, Defendant Federal Express Corporation requests that the Court grant its motion for partial summary judgment as to Plaintiff's split shift premium claim.

February 22, 2011

Respectfully submitted,

FEDERAL EXPRESS CORPORATION

/s/Sandra C. Isom
SANDRA C. ISOM