IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

ALEX GALVEZ, et al.,

              Plaintiffs,

v.

FEDERAL EXPRESS INC.,

              Defendant.

NO. C07-2505 TEH

ORDER GRANTING DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT

This matter came before the Court on April 25, 2011, on a motion for partial summary judgment brought by Defendant Federal Express Inc. ("FedEx"). After carefully considering the parties' written and oral arguments, the Court now GRANTS FedEx's motion for the reasons discussed below.

**BACKGROUND**

The parties agree that FedEx's employment of Plaintiffs must comply with Industrial Wage Commission ("IWC") Wage Order 9, section 4:

> **4. MINIMUM WAGES**
>
> (A) Every employer shall pay to each employee wages not less than seven dollars and fifty cents ($7.50) per hour for all hours worked, effective January 1, 2007, and not less than eight dollars ($8.00) per hour for all hours worked, effective January 1, 2008, except:
>
> LEARNERS: Employees during their first 160 hours of employment in occupations in which they have no previous similar or related experience, may be paid not less than 85 percent of the minimum wage rounded to the nearest nickel.
>
> (B) Every employer shall pay to each employee, on the established payday for the period involved, not less than the applicable minimum wage for all hours worked in the payroll period, whether the remuneration is measured by time, piece, commission, or otherwise.

> (C) *When an employee works a split shift, one (1) hour's pay at the minimum wage shall be paid in addition to the minimum wage for that workday, except when the employee resides at the place of employment.*
>
> (D) The provisions of this section shall not apply to apprentices regularly indentured under the State Division of Apprenticeship Standards.

Cal. Code Regs. tit. 8, § 11090(4) (emphasis added). The parties also agree that the relevant minimum hourly wage in 2006 was $6.75. However, they disagree as to how section 4(C) should be interpreted.

The relevant facts are undisputed: Plaintiffs Alexander Galvez and Marc Garvey formerly worked as couriers for FedEx. On May 30, 2006, Garvey worked from 7:30 AM to 12:00 PM and from 1:30 PM to 6:15 PM, for a total of 9 hours, 15 minutes of paid work time. Although Garvey did not receive an additional premium for working a split shift, he was paid more than $69.19, the minimum wage for 10 hours, 15 minutes of work.

On November 21, 2006, Galvez worked from 7:00 AM to 12:32 PM and from 1:47 PM to 8:08 PM, for a total of 11 hours, 53 minutes of paid work time. Like Garvey, Galvez also did not receive an additional premium for working a split shift. However, he was paid more than $86.97, the minimum wage for 12 hours, 53 minutes of work.

The parties agree to assume, for purposes of this motion only, that the above two shifts were split shifts within the meaning of section 2(N) of IWC Wage Order 9, which defines a "split shift" as "a work schedule, which is interrupted by non-paid non-working periods established by the employer, other than bona fide rest or meal periods." Cal. Code Regs. tit. 8, § 11090(2)(N). FedEx contends that it satisfied its obligations under section 4(C) of the wage order. The company asserts that the regulation was designed to ensure that employees who work a split shift receive at least the minimum wage for all time actually worked plus one hour, meaning that an employee who makes more than the minimum wage might not receive any additional pay for working a split shift. Plaintiffs' position, by contrast, is that employees who work a split shift are entitled to receive their regular wages for the hours they worked plus a premium of one hour's pay at the minimum wage for

2

1 working a split shift. Thus, Plaintiffs contend that they are entitled to an additional $6.75,
2 the relevant hourly wage at the time, as a premium for working a split shift on the two days
3 discussed above.

**LEGAL STANDARD**

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Material facts are those that may affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute as to a material fact is "genuine" if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party. *Id.* The court may not weigh the evidence and must view the evidence in the light most favorable to the nonmoving party. *Id.* at 255.

A party seeking summary judgment bears the initial burden of informing the court of the basis for its motion, and of identifying those portions of the pleadings or materials in the record that demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Where the moving party will have the burden of proof at trial, it "must affirmatively demonstrate that no reasonable trier of fact could find other than for the moving party." *Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir. 2007). However, on an issue for which its opponent will have the burden of proof at trial, the moving party can prevail merely by "pointing out to the district court . . . that there is an absence of evidence to support the nonmoving party's case." *Celotex*, 477 U.S. at 325. If the moving party meets its initial burden, the opposing party must then set out specific facts showing a genuine issue for trial to defeat the motion. *Anderson*, 477 U.S. at 250.

**DISCUSSION**

FedEx's motion appears to raise an issue of first impression. Case law provides that the regulation applies to all workers, even those who make more than minimum wage, *e.g., Tidewater Marine Western, Inc. v. Bradshaw*, 14 Cal. 4th 557, 558 (1996); *Kerr's Catering*

3

*Serv. v. Dep't of Indus. Relations*, 57 Cal. 2d 319, 324-25 (1962); however, the parties have cited no case, and this Court has found none, that addresses how to determine whether an employer has complied with its obligations under IWC Wage Order 9, section 4(C). Plaintiffs cite the California Supreme Court's statement that "the employer must pay the employee one additional hour of wages" when an employee works a split shift, *Murphy v. Kenneth Cole Productions, Inc.*, 40 Cal. 4th 1094, 1111 (2007), but acknowledge that the statement was dicta. Moreover, the statement in *Murphy* does not describe how to determine whether an employer has satisfied its obligations under the regulation.

IWC wage orders are construed according to general principles of statutory interpretation. *Collins v. Overnite Transp. Co.*, 105 Cal. App. 4th 171, 178-79 (2003). Thus:

> [W]e must look first to the words of the statute, because they generally provide the most reliable indicator of legislative intent. If the statutory language is clear and unambiguous our inquiry ends. If there is no ambiguity in the language, we presume the Legislature meant what it said and the plain meaning of the statute governs. In reading statutes, we are mindful that words are to be given their plain and commonsense meaning. We have also recognized that statutes governing conditions of employment are to be construed broadly in favor of protecting employees. Only when the statute's language is ambiguous or susceptible of more than one reasonable interpretation, may the court turn to extrinsic aids to assist in interpretation.

*Murphy*, 40 Cal. 4th at 1103 (citations and internal quotation marks omitted). When interpreting statutory language, courts must give "significance, if possible, to every word, phrase and sentence in pursuance of the legislative purpose. A construction making some words surplusage is to be avoided." *Dyna-Med, Inc. v. Fair Emp't & Hous. Comm'n*, 43 Cal. 3d 1379, 1386-87 (1987).

This Court agrees with FedEx that the language of section 4(C) is not ambiguous. The regulation provides that one hour at minimum wage shall be paid "in addition to the *minimum* wage for that workday." Cal. Code Regs. tit. 8, § 11090(4)(C) (emphasis added). Adopting Plaintiffs' interpretation would violate principles of statutory construction by substituting "regular wage" for "minimum wage." In addition, Plaintiffs' reading would require that one hour at minimum wage be paid whenever a covered employee worked a split

4

1  shift, which would render as surplusage the phrase "in addition to the minimum wage for that
2  workday." That is, under Plaintiffs' interpretation, the regulation would essentially read:
3  "When an employee works a split shift, one (1) hour's pay at the minimum wage shall be
4  paid, except when the employee resides at the place of employment."

5        Plaintiffs argue that the "in addition to" language is important because it establishes
6  that the split shift premium is an additional obligation to paying at least the minimum wage
7  for the workday. This is not persuasive. While the split shift regulation does impose an
8  additional requirement beyond paying an employee the minimum wage for hours worked,
9  FedEx acknowledges this fact. There is no dispute that the regulation applies to all workers
10 and not just those making minimum wage – that is, that an employer must pay employees
11 who work a split shift at least the minimum wage for the hours actually worked and, in
12 addition, for one additional hour as a result of requiring a split shift. The issue is how
13 compliance with this regulation is determined.

14       The IWC did not separate the split shift regulation into its own section, as it did, for
15 example, with "reporting time pay" in section 5. Instead, the regulation is contained in
16 section 4, which governs "minimum wages." Although Plaintiffs correctly argue that
17 workplace regulations must be construed broadly in favor of protecting employees, the Court
18 finds that the protection at issue concerns minimum wages. The plain language of the split
19 shift regulation reflects an intent to ensure that an employee who works a split shift must be
20 compensated highly enough so that he or she receives more than the minimum wage for the
21 time actually worked plus one hour. Because the language in the wage order is clear, the
22 Court's inquiry ends, and the extrinsic aids presented by the parties need not be examined.

23       However, even if this Court were to consider extrinsic aids, there is no indication that
24 the regulation was designed to require that one hour at minimum wage be paid to every
25 employee who works a split shift regardless of that employee's regular rate of pay. Plaintiffs
26 argue that an opinion letter from the Division of Labor Standards Enforcement ("DLSE")
27 supports their interpretation of the split shift regulation, but the Court finds the letter to stand
28 only for the unremarkable proposition that the regulation applies to all employees and not

5

just those earning minimum wage. The letter addresses a question from a PayLess Drug Stores manager about how to calculate overtime pay for certain employees. Plaintiffs cite the letter's statement that, "[i]n addition, your company would be liable for a split shift premium on the days an employee works the end of one shift and the beginning of the next (Monday, Tuesday and Wednesday of your example)." DLSE Opinion Letter 1986.12.01 at 1 (Ex. A to Opp'n). This states only that the split shift regulation would apply; it says nothing about how to calculate the wages due under that regulation, let alone how to do so if an employee makes more than the minimum wage.

The only evidence that discusses how to determine compliance with the split shift regulation weighs against Plaintiffs' interpretation. First, at a public meeting held on April 25, 1977, the IWC met to adopt a revised statement of the basis of four wage orders. A commissioner explained that:

> In Subsection (C) the Commission continued the split-shift provision on the basis that a minimum wage worker's income should not be eroded by the additional expense involved in working a split-shift.
>
> *Some employee representatives asked that the $2.50 be paid in addition to whatever regular rate of pay was earned during the day, but most wage boards agreed that the premium should be paid in addition to the minimum wage for the hours worked.*

Apr. 25, 1977 Tr. at 28-29 (Ex. C to Def.'s Req. for Judicial Notice) (emphasis added).[1] Plaintiffs argue that this represents only the view of a single commissioner, but it appears to be the statement of a single commissioner speaking on behalf of the IWC. Although the statement refers to a different wage order, that order had the same language as Wage Order 9. Thus, the above statement is some evidence that the language in dispute was intended to be interpreted in FedEx's favor.

Second, the 1978 version of the DLSE manual stated:

> The IWC emphasized in a statement of basis that the premium is to be paid in addition to the minimum wage for the day, and NOT in addition to whatever regular rate is paid. <u>If the wage rate is higher than the applicable minimum wage, the excess over the minimum wage is credited toward the split shift premium</u>.

---

[1] $2.50 was the minimum hourly wage at the time.

6

DLSE Operations & Procedures Manual § 10.48, page 5 (Ex. D to Def.'s Req. for Judicial Notice) (emphasis in original).  While this statement loses some of its persuasive value because it was removed from later versions of the manual, FedEx relies on the declaration of Gregory Rupp, a former assistant chief (1995-2003) and acting deputy chief (2003-04) at DLSE, to state that the omission from later editions "is not an indication that the DLSE discontinued this method of determining compliance with the split shift requirement. . . . If the DLSE had changed its method of enforcing the split shift premium, that should have been included in later editions as a revision to explain the change and reason for the change." Rupp Decl. ¶ 11.  Rupp's declaration also states that, "[i]f an employee's wage rate was higher than the applicable minimum wage, the amount of regular wages that exceeded minimum wage was credited toward the split shift premium." *Id.* ¶ 10.

Plaintiffs object to the Court's consideration of the Rupp declaration as improper expert testimony on the interpretation of a law, citing *Downer v. Bramet*, 152 Cal. App. 3d 837 (1984).  However, the testimony that was excluded in *Downer* was testimony by two attorneys giving a legal opinion – a vastly different circumstance than that present here.  In this case, Rupp has specialized knowledge about the operations of the DLSE and provides testimony, based on his personal knowledge, of how the agency interpreted the split shift regulation.  The Court need not accept that interpretation as the correct legal interpretation, but the declaration is evidence of how the regulation was interpreted in practice.  Although DLSE's own interpretation is not binding, it should be considered. *E.g., Yamaha Corp. of Am. v. State Bd. of Equalization*, 19 Cal. 4th 1, 7 (1998).

In the absence of any contrary evidence, DLSE's interpretation of the split shift regulation and the statement by the IWC concerning similar language in other regulations are persuasive.  Both also comport with the Court's own reading of the regulation.  Consequently, even if the Court agreed with Plaintiffs that the split shift regulation were subject to more than one reasonable interpretation, it would nonetheless adopt the interpretation supported by FedEx.

7

**CONCLUSION**

For the reasons discussed above, the Court GRANTS FedEx's motion for partial summary judgment. The wage order in question clearly and unambiguously states that an employee who works a split shift must receive one hour's pay at the minimum wage in addition to the *minimum*, not regular, wage for that workday – an interpretation that is also supported by extrinsic evidence. Accordingly, this Court concludes that an employer satisfies its obligations under the split shift regulation if it pays an employee who works a split shift at least the minimum wage for the actual time spent working plus one additional hour.

**IT IS SO ORDERED.**

Dated:   04/28/11

THELTON E. HENDERSON, JUDGE
UNITED STATES DISTRICT COURT